CARRIE E. GOODHART, RESPONDENT, v. CHARLES P. LATTING AND ANOTHER, AS COMMISSIONERS FOR LOANING CERTAIN MONEY OF THE UNITED STATES, ETC., APPELLANTS.

*Commissioners for loaning certain money of the United States — need not publish notices in the paper selected under chapter 656 of 1874 — they are State, not county officers.*

The commissioners for loaning certain money of the United States, appointed under chapter 150 of the Laws of 1837, are not obliged, in publishing the notice required by law for the foreclosure of the rights of mortgagors in lands upon which mortgages have been given, to publish the same in the paper selected under the provisions of chapter 656 of the Laws of 1874, as such commissioners are within the exception prescribed by said act, which does not "require the publication of any advertisements, notices, reports or statements, now under the direction or control of any officer of the State government, in such paper."

The commissioners, selected under chapter 150 of the Laws of 1837, have not been made subject to the control or interference of any county authority, but they hold their offices and discharge their duties wholly in subordination to the provisions and direction of the statute, and although they are known as commissioners of the several counties for which they are appointed, the powers possessed by them are determined by the statute of the State, and their duties relate wholly to the management of the property of the State.

APPEAL by the defendants from an order made at the Special Term of the Supreme Court of Westchester county, and entered in the office of the clerk of the county of New York on the 9th day of February, 1889, granting a motion made by the plaintiff to continue a preliminary injunction pending the hearing and determination of this case. The defendants were commissioners for loaning certain money of the United States, appointed under chapter 150 of the Laws of 1837.

*Leslie W. Russell*, for the appellants.

*Joseph P. Joachimsen*, for the respondent.

DANIELS, J.:

The action was brought to restrain the defendants as loan commissioners, from making sale of two parcels of land described in the complaint. They had loaned portions of what is called the United States deposit fund on two separate mortgages on this property, situated

in the city of New York. Default had been made in the payment of interest upon the loans secured by the mortgagees, and the effect of that default was to vest the commissioners with the absolute title to the lands described in the mortgages, subject only to an outstanding right of redemption (1 R. S. [6th ed.], 750, § 32.) To extinguish this right of redemption the commissioners were required by the statute to cause an advertisement to be put up in not less than three public places in the county where the premises were situated, containing a description of the lands mentioned in the mortgages, and to cause a copy of the advertisement to be published in at least one of the public newspapers printed in the county, if any there should be, and if there should be none, then in the nearest paper to the county, once in each week, successively, until the day of sale. This notice was required to be posted and published within eight days after the time prescribed for the yearly attendance of the commissioners, and they were required thereby to give notice that the sale would take place on the first Tuesday of February, then next. A copy of the advertisement was also directed to be served upon the mortgagor, or his personal representatives, and upon such persons as should appear to be grantees, lessees or mortgagees of the premises, and upon all persons having any lien or incumbrance thereon, by judgment or otherwise, subsequent to the commissioners' mortgage, and a sale made pursuant to the notice would extinguish the owners' right of redemption. (1 R. S., 750, 751, §§ 33, 34.) The commissioners proceeded to comply with these requirements of the statute for the posting, publication and service of notices, and published their notice in the paper, published in the city of New York, called the Daily Register. The plaintiff, insisting that this publication was irregular and without authority, for the reason that the New York Law Journal had been selected for the publication of the notices mentioned in chapter 656 of the Laws of 1874 (Preface to Laws of 1875), obtained an injunction in this action restraining the sale of the premises. This act has provided for the designation of a daily law journal in the city of New York, in which there shall be published every notice or advertisement in legal proceedings required by law to be published in one or more papers in said city or county. And in case the notice is to be published in only one paper, then the publication shall be made in the paper designated under this authority.

This general direction, however, as to the publication of notices has been so qualified as not " to require the publication of any advertisements, notices, reports or statements now under the direction or control of any officer of the State government in such paper."

The object which this act seems to have had in view was the publication of notices and advertisements in legal proceedings pending or commenced in the courts. The journal to be designated has been described as a daily law journal, and the calendars of the courts of record held in the city and county of New York have been required to be published in this paper, as well as notices and advertisements already mentioned. It provided a means through which legal information should be conveyed, and the journal mentioned in the act was intended to include the publication of such information and notices as would be adapted to promote the business of the courts. This was not a proceeding in any court, but it was under special provisions of a general statute of the State relating to the management, loan and collection of the United States deposit fund. This fund, under an act of congress passed in 1836, was placed in the custody of the government of the State of New York, subject to certain obligations mentioned in the act. Practically, however, it was donated to the State, and it has been used and managed for the benefit of the schools and educational institutions of the State, and no county in the State had any right or interest in the moneys beyond those prescribed by chapter 2 of the Laws of 1837, and the amendments afterwards enacted. These statutes provided for the division of the interest moneys among the schools in the towns, cities and villages of the State, and their management, loaning and collection were placed under the supervision of officers in each county to be nominated by the governor and confirmed by the consent of the senate of the State.

The commissioners selected in this manner have not been subjected to the control or interference of any county authority, but they have held their offices and discharged their duties wholly in subordination to the provisions and directions of these statutes. And while they are known and designated as commissioners of the several counties in which they are appointed they derive no authority from such counties, but all the powers and authority possessed by them are derived from the statute of the State, and their selection and con-

firmation by the governor and senate. Their duties relate wholly to the management of the property of the State, and not of that of the county in which they may be respectively appointed to act.

After the enactment of the first of these statutes, by sections 1 and 2 of article 10 of the Constitution of the State, certain officers, not including these commissioners, have been required to be elected for each county by the electors thereof, and all county officers whose election or appointment has not been provided for by the Constitution have been required to be elected by the electors of the county or appointed by the board of supervisors or other county authorities, as the legislature shall direct. And if these commissioners are officers of the county, then they should be elected by the electors of the county or appointed by the board of supervisors, or other county authorities. But that has not been done or provided for in any manner, the legislature evidently considering them not to have been included in these constitutional provisions. While their functions and duties are to be exercised and performed in the county for which they may be appointed, those functions and duties include no part whatever of the county government, but are wholly directed to the supervision and management of property belonging to the State. This has at all times been regarded as the true scope of their powers, duties and authority. And the uniform conduct of the government in this respect strongly fortifies the construction which it has already been suggested these constitutional provisions should receive. And the notices required to be given by the commissioners, under this construction of their duties and authority, are, by its own limitation, excluded from the effect of chapter 656 of the Laws of 1874. The act of 1837 (chap. 150) was intended to supply and provide a uniform system and mode of proceeding for the commissioners in every county in the State, while the act of 1874 related only, as its object has been declared in its title, to the publication of judicial proceedings and legal notices in New York city and county; and being a special and a local act, under well-settled principles of statutory construction, it should not be construed to be applicable to a proceeding under the act of 1837, which the law intended should be uniformly conducted according to its own provisions, by the commissioners in each one of the counties of the State. The commissioners' notice of sale cannot,

therefore, be required to be published in the daily law journal designated for the city of New York, but it may be legally and regularly published in any newspaper printed in the county, under the authority of section 33 of chapter 150 of the Laws of 1837, as that has since been amended.

The commissioners' notices were published in this manner, and that publication being regular, the injunction was issued and continued without authority. The order should be reversed, with ten dollars costs and the disbursements, and the motion denied, with costs.

VAN BRUNT, P. J., and BRADY, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied with costs.